[No. 27708. Department One. July.18, 1941.]

OCEANIC FISHERIES COMPANY, INC., *Appellant,* v. UNITED STATES FIDELITY & GUARANTY COMPANY, *Respondent.*[1]

---

[1]Reported in 115 P. (2d) 714.

*Koenigsberg & Sanford,* for appellant.

*Eggerman & Rosling* and *DeWitt Williams,* for respondent.

ROBINSON, C. J.—Respondent, United States Fidelity and Guaranty Company, June 6, 1935, issued to Oceanic Fisheries Company, Inc., a policy of employer's liability insurance containing the following provisions:

"The United States Fidelity and Guaranty Company, hereinafter called the Company, does hereby agree:

"1. To INDEMNIFY the person, firm or corporation named in Statement 1 of the schedule and hereinafter called the Assured, AGAINST LOSS FROM THE LIABILITY IMPOSED BY LAW UPON THE ASSURED for damages on account of bodily injuries or death at any time resulting therefrom, suffered by any employe or employes of the Assured as the result of an accident while on or about the vessel or vessels described in the schedule of statements below while this policy is in force.

"2. To DEFEND in the name and on behalf of the Assured any suit brought against the Assured to enforce a claim, whether groundless or not, for damages on account of bodily injuries or death at any time resulting therefrom, suffered or alleged to have been suffered by any employe or employes of the Assured described in the preceding paragraph and as the result of an accident occurring while this policy is in force."

[The above provisions were contained in a "Marine Employer's Endorsement" attached to and made a part of the policy.]

"In consideration of the reduced rate of premium for which this policy is issued, it is hereby understood and agreed, that in the event of no legal liability on the part of the assured for damages as conditioned in Insuring Clause One (1) of the Marine Employers Endorsement attached to this policy, this policy does not indemnify the assured against any liability for wages and maintenance of injured employees during disability or for cost of medical, surgical or hospital services or treatment or cure to injured employees of the assured or for any transportation charges incurred by the assured for the transportation of injured employes and anything in the policy or attached endorsements to the contrary is hereby amended accordingly. It is further understood and agreed that in event of a judgment at law against the assured for legal liability for damages as conditioned in Insuring Clause One (1) of the said Marine Employers Endorse-

ment, this policy does indemnify the assured for such wages and maintenance of injured employes during disability and the cost of medical, surgical and hospital services or treatment and cure to injured employes of the assured and for transportation charges for the transportation of injured employes *as may be included in any verdict for damages rendered against the assured,* and anything in the policy or attached endorsements to the contrary is hereby amended accordingly." (Italics ours.)

[The above provisions were contained in a typewritten "endorsement" attached to and made a part of the policy.]

This case turns upon the construction to be given to the foregoing endorsements, and, particularly, upon the words which we have italicized in the endorsement last quoted, "as may be included in any verdict for damages rendered against the assured," the appellant assured contending that they mean, which were legally capable of being included in such a verdict or might have been included therein, while the respondent contends they mean, as may actually have been included.

The controversy arises out of the following facts: Albert Haugen suffered a personal injury while employed on a vessel which the assured was operating in Alaskan waters. He received medical attention at Seward and, later, at the Marine hospital in Seattle. The expenses of his treatment at Seward and the cost of his transportation to Seattle were paid by the assured. Thereafter, he brought suit against the assured in the superior court of Washington for King county to recover damages with respect to his personal injury, and recovered a verdict and judgment for one thousand dollars, which judgment was paid by the respondent insurance company.

Haugen then brought an admiralty action in the

United States district court at Seattle against the vessel, its master, owner, and charterer (the assured), alleging that he was still disabled and seeking recovery for further wages, maintenance, and cure. This action was dismissed, the court holding the judgment of the state court, above referred to, and which the insurance company had paid, was *res judicata* with respect to those matters. *Haugen v. Oceanic Fisheries Co.*, 21 F. Supp. 572. Thereafter, the Oceanic Fisheries Company brought this action to recover the sum paid by it for treatment of Haugen at Seward, and for his transportation to Seattle, together with the costs of defending the admiralty action. The insurance company prevailed, and the insured appeals.

The trial court, in construing the language of the policy, received a great deal of evidence relating to the intention of the parties, and this evidence is, in that particular, in sharp conflict. It would be impossible to discuss this evidence within the limits of an opinion, nor, in our view, is it necessary to do so. It may be said, generally, that it appears that Mr. Snapp, a member of a firm of insurance brokers acting as agent for the assured, called at the office of the general agents of the respondent insurance company to negotiate the policy. It is agreed that the coverage desired was discussed with Mr. McCollister, the agent of the insurance company, and that he drafted the endorsements; and that, after they were reduced to writing, they were fully discussed between the agent for the assured and the agent for the insurer before the execution and delivery of the policy. It also appears that the agents of both parties to the insurance contract were familiar with the fact that a seaman, injured while employed on a vessel, has two remedies, one at law under the Jones act to recover damages with respect to his personal injury, and another under

the general maritime law for maintenance, wages, and cure. This latter remedy is contractual. A seaman has that remedy as a matter of right, irrespective of negligence or fault.

It was known also to these agents, at the time they negotiated the policy for their respective principals, that both remedies may be enforced, and are quite commonly enforced, in a single action at law in a state court. For example, seamen frequently institute a single action at law seeking recovery in a first cause of action with respect to personal injuries, and, in a second, for care and cure. The negotiating agents also knew that, in such an action, the jury ordinarily returns a general verdict in a single, unsegregated amount. A seaman, however, is not confined to enforcing his remedies in that manner. He may, as Judge Neterer clearly pointed out in the final paragraph of his opinion in the admiralty suit (21 F. Supp. 572), bring an action in admiralty for recovery with respect to wages, maintenance, and cure, and at the same time, or later, pursue his remedy for damages for personal injuries in a separate action at law.

It further appears in the evidence, and we would know it to be true without evidence, that no insurer could undertake to indemnify a vessel operator against liability to his seamen for wages, maintenance, care, and cure without charging a very high premium. This is so, because that liability is absolute, since it comes into being when a seaman falls ill or is injured while in the service of the ship, even though his illness may be the mere aggravation of a long existing disease, or the sole cause of his injury his own negligence; and, second, because, in the case of a single accident, the liability for medical, surgical, and hospital fees, transportation, etc., may amount to a very large, and wholly unpredictable sum, and this, although the accident

may be of a very trifling character. In the instant case, Haugen's injury consisted of a blister, occasioned by a frying pan falling on his foot. The insured paid Haugen $432 with respect to care and cure; yet, Haugen claimed this to be insufficient, and, subsequently, brought an admiralty action which is described in the opinion in that cause as follows:

"Libelant seeks to recover the sum of $25,000 'for his maintenance, subsistence and cure' for injuries sustained on the voyage of the respondent ship Progress as a seaman on said vessel on or about the 13th day of May, 1936, while at sea in the Alaskan waters." *Haugen v. Oceanic Fisheries Co.*, 21 F. Supp. 572.

There is abundant evidence in the record that no insurance companies were writing policies fully covering maintenance and cure at the time the policy in suit was written. The risk had been found by experience to be so great and unpredictable, and the whole matter so much of a gamble, that prohibitive premiums would be required. The insurance broker who represented the appellant in obtaining the policy did not fully concede that such policies were not procurable, but it appears from his evidence that he knew of no policy of that sort having been issued in recent years.

In preparing the typewritten endorsement, it does not seem strange, then, that the agents for the insurance company used the following language:

"In consideration of the reduced rate of premium for which this policy is issued, it is hereby understood and agreed, that in the event of no legal liability on the part of the assured for damages as conditioned in Insuring Clause One (1) of the Marine Employers Endorsement attached to this policy, this policy does not indemnify the assured against any liability for wages and maintenance of injured employees during disability or for cost of medical, surgical or hospital services or treatment or cure to injured employees of

the assured or for any transportation charges incurred by the assured for the transportation of injured employes and anything in the policy or attached endorsements to the contrary is hereby amended accordingly. . . . "

It is clear that this language eliminates the insurer's liability for any sum based upon care and cure, etc., only. But it was followed by the following provision:

"It is further understood and agreed that in event of a judgment at law against the assured for legal liability for damages as conditioned in Insuring Clause One (1) of the said Marine Employers Endorsement, this policy does indemnify the assured for such wages and maintenance of injured employes during disability and the cost of medical, surgical and hospital services or treatment and cure to injured employes of the assured and for transportation charges for the transportation of injured employes as *may* be included in any verdict for damages rendered against the assured, and anything in the policy or attached endorsements to the contrary is hereby amended accordingly." (Italics ours.)

As we have already seen, a judgment at law was rendered against the insured on account of legal liability "as conditioned in Insuring Clause One (1) of the Marine Employers Endorsement." This judgment the insurance company paid. It says that, if, as is often done, the plaintiff had sued in that action, both for damages for his personal injuries and to recover for care and cure, and the jury had returned a general verdict without segregating the items, it would have been bound to pay the entire judgment, and that it was just such a situation that the limitation or exception was intended to cover. But the appellant says that, although care and cure were not actually included in this instance, it *might* have been, although it is difficult to see how, since it was the Oceanic Fisheries

Company, and not Haugen, the plaintiff in the action, who had expended the money. But, passing that, and in spite of the somewhat plausible, technical argument as to the meaning of the word "may" in the phrase "may be included in" and the grammatical argument concerning the doctrine of last antecedent, with respect to which appellant cites: Black on Interpretation of Laws (2d ed.), 223, § 73; Beal's Cardinal Rules of Legal Interpretation (3d ed.), 68; Endlich on Interpretation of Statutes, § 414; 2 Sutherland on Statutory Construction (2d ed.), 811, § 420; Broom's Legal Maxims (8th ed.), 440; *Dagan v. State,* 162 Wis. 353, 156 N. W. 153; *Puget Sound Electric R. v. Benson,* 253 Fed. 710; *Traverse City v. Blair Twp.,* 190 Mich. 313, 157 N. W. 81, Ann. Cas. 1918E, 81; *Wood v. Baldwin,* 56 Hun. 647, 10 N. Y. Supp. 195; *Zwietusch v. East Milwaukee,* 161 Wis. 519, 154 N. W. 981; *Nebraska State R. Commission v. Alfalfa Butter Co.,* 104 Neb. 797, 178 N. W. 766, we are of the opinion that the word "may," in the phrase "may be included in," has reference to care and cure, etc., as well as transportation charges, and was used in the sense of futurity; and that the insurance company, in effect, said, in the typewritten endorsement, we will not indemnify the assured against any liability for wages, maintenance, care, and cure, etc., except in this limited way: If, in an action at law, a verdict is rendered against the assured with respect to bodily injuries, and this verdict includes a recovery with respect to care and cure also, we will not refuse to indemnify the assured with respect to that verdict upon the ground that we are bound to indemnify it with respect to damages for personal injuries only, but will pay the entire judgment.

In other words, we accept, as the trial court did, the interpretation given by the agent of the insurance com-

pany who drafted the endorsement, that the purpose of the limitation was to provide for the situation where a seaman might sue for his injury and for care and cure in the same action, and a general, nonsegregated verdict be rendered. That kind of a verdict the insurer agreed to cover. This, it seems to us, construing the policy as a whole, is a reasonable interpretation of the second endorsement, and does no violence to the language used. In view of the rules governing a seaman's rights and remedies, we think that this result follows from a mere construction of the endorsement, and we do not find it necessary to resort to an analysis of the conflicting evidence of the agents of the contracting parties as to their actual respective intents, a conflict, by the way, which the trial court evidently resolved in favor of the respondent.

It is urged however, that the appellant should, in any event, recover its expenses incurred in defending the admiralty action. This contention is made upon the ground that "the judgment in the superior court conclusively established the negligence of the respondent [appellant]." But it did a great deal more than that. It adjudicated, and therefore extinguished, all possible claims which Haugen might make as to care and cure. No occasion for the respondent to indemnify the assured with respect to a recovery of the plaintiff Haugen for care and cure in an admiralty action, or in any other, could ever arise. And, in any event, the defense clause of the policy (paragraph 2 of the first endorsement quoted) covered actions for damages on account of bodily injuries or death only. No damages for bodily injuries were sought in the admiralty action. In that action, the libelant merely sought to enforce contractual rights under the general maritime law. In offering to defend that action under a reser-

vation of liability, the respondent did all, and, in our opinion, somewhat more than, it was legally required to do.

The judgment appealed from is affirmed.

MILLARD, STEINERT, BLAKE, and SIMPSON, JJ., concur.

[1]Reported in 115 P. (2d) 724.